Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| THE RAÚL MORALES GUANILL RETIREMENT PLAN TRUST SERIES 101 PETICIONARIO V. MICHAEL EDWARD BITLER MILLER, JOSEPHINE ANGÉLICA BITLER, SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR MICHAEL EDWARD BITLER MILLER Y JOSEPHINE ANGÉLICA BITLER RECURRIDOS | TA2026CE00632 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Humacao Caso Núm.: HU2020CV00154 Sobre: Ejecución de Hipoteca |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz, y la jueza Santiago Calderón[1]

**Brignoni Mártir, Juez Ponente**

### RESOLUCIÓN

En San Juan, Puerto Rico, a 18 de junio de 2026.

Comparece ante nos The Raúl Morales Guanill Retirement Plan Trust Series 101 (en adelante, "parte peticionaria") y solicita nuestra intervención para que dejemos sin efecto la *Resolución* emitida el 13 de abril de 2026, notificada el día siguiente, por el Tribunal de Primera Instancia, Sala Superior de Humacao. Mediante el referido dictamen, el foro primario declaró No Ha Lugar la *Moción Solicitando Reapertura del Caso, Determinación de Incumplimiento y Ejecución de Sentencia*, presentada por la peticionaria, para reabrir un caso previamente archivado, por acuerdo con Michael Edward Bitler Miller, Josephine Angélica Bitler y la Sociedad Legal de Gananciales compuesta por ambos (en adelante, "esposos Bitler" o "parte recurrida").

---

[1] Véase Orden Administrativa OATA-2026-078.

Por los fundamentos que exponemos a continuación, denegamos la expedición del auto de *certiorari*.

**I.**

El 3 de febrero de 2020, la parte peticionaria presentó una *Demanda*[2]*,* sobre ejecución de hipoteca, en contra de los esposos Bitler. Alegó que es tenedor de un Pagaré Hipotecario, constituido sobre un bien inmueble, propiedad de los esposos Bitler. Adujo que estos incumplieron con los términos y condiciones de pago del referido Pagaré Hipotecario, al haber dejado de pagar las mensualidades vencidas desde junio de 2019, hasta el momento de presentar la *Demanda*. Sostuvo que los esposos Bitler adeudan la suma de $1,360,390.39 por concepto de principal, más la suma de $27,393.45 por concepto de intereses pactados acumulados, más los intereses que continúan acumulándose hasta que el principal sea satisfecho en su totalidad. Además, una suma equivalente al diez por ciento (10%) del principal del Pagaré Hipotecario por concepto de costas, gastos y honorarios de abogado. Alegó que, en defecto de que los esposos Bitler efectúen el pago de todas las cantidades adeudadas, procede la ejecución de la hipoteca, vendiendo en pública subasta al mejor postor el bien inmueble.

El 15 de julio de 2020, los esposos Bitler presentaron una *Moción en Solicitud de Referido Para Mediación Compulsoria en Virtud de la Ley Núm. 184-2012, Según Enmendada*.[3] Por medio de dicho escrito, solicitaron al foro *a quo* que refiriera el caso para el proceso de mediación compulsoria y que ordenara la paralización del caso hasta que concluyera dicho proceso. Adujo que procedía la mediación, debido a que el bien inmueble sujeto al pleito constituía su hogar y vivienda principal. Sostuvieron, además que, si concluido el proceso de mediación, las partes no hubiesen podido llegar a un acuerdo favorable para ambos, presentarían la

---

[2] Entrada Núm. 1 del Sistema Unificado de Administración y Manejo de Casos del Tribunal de Primera Instancia (SUMAC TPI).

[3] Entrada Núm. 9 del SUMAC TPI.

correspondiente contestación a la *Demanda*. Dicha *Moción* fue declarada Ha Lugar el 21 de julio de 2020.[4]

Luego de varios trámites procesales, el 2 de agosto de 2021, las partes presentaron, en conjunto, una *Aceptación de Acuerdos por Videoconferencia*.[5] Por medio de dicho *Acuerdo*, las partes establecieron los términos y condiciones para atender la controversia. En ella, incluyeron los siguientes acuerdos:

a) Los "Deudores Hipotecarios", como consecuencia del incumplimiento de los términos y condiciones del Pagaré Hipotecario y la Escritura de Hipoteca objeto de la demanda de epígrafe, adeudan al "Acreedor Hipotecario" al día 28 de julio de 2021 las mensualidades vencidas de los meses de junio de 2019 a julio de 2021, ambos meses inclusive, los cuales a razón de Ocho Mil Dólares mensuales por veintiséis (26) meses ascienden a la suma de Doscientos Ocho Mil Dólares ($208,000.00).

b) Además, los "Deudores Hipotecarios" adeudan al CRIM hoy, por concepto de contribuciones sobre la propiedad inmueble de la antes descrita propiedad inmueble, la suma de Cuarenta y Cinco Mil Quinientos Sesenta y Dos Dólares ($45,562.00).

c) En relación a los Doscientos Ocho Mil Dólares relacionados en el inciso (a), se acordó que dicha cantidad acumulará intereses a razón del 4% anual y que dicho principal de Doscientos Ocho Mil Dólares ($208,000.00) más los intereses serán pagados al "Acreedor Hipotecario" en cuarenta y ocho (48) meses, conjuntamente con los pagos del pagaré hipotecario correspondiente a las mensualidades de agosto de 2021 a julio de 2025, ambos meses inclusive, a razón de Doce Mil Seiscientos Noventa y Seis Dólares con Sesenta y Cuatro Centavos ($12,696.64) cada uno ($4,696.64 + $8,000.00 = $12,696.64). Las restantes mensualidades de julio de 2025 deberán continuar pagándose según pactado en el Pagaré Hipotecario suscrito el 19 de mayo de 2017, ante el Notario Eduardo R. Guzmán Valiente, bajo su affidavit número 6145.

d) Mediante el presente acuerdo los "Deudores Hipotecarios" ceden al "Acreedor Hipotecario", hasta el monto que le adeuden al "Acreedor Hipotecario" en dicho momento, los dineros que reciban de la Compañía de Seguro bajo el caso Civil Número HU21018CV00944, radicado ante el Tribunal de Primera Instancia, Sala de Humacao, específicamente por los daños a la estructura localizada en la propiedad inmueble antes descrita, todo ello bajo la póliza de seguro número 2777168005589, en el cual se incluye como asegurado adicional y beneficiario al "Acreedor Hipotecario".

---

[4] Entrada Núm. 10 del SUMAC TPI.

[5] Entrada Núm. 15 del SUMAC TPI.

e) A base de la cantidad que se reciba de la Compañía de Seguro, de aún existir un balance por concepto del atraso, se le realizará un ajuste al pago mensual por los meses restantes del período de los cuarenta y ocho meses, a computarse del balance que reste del principal adeudado, a razón del 4% del interés pactado.

f) En relación con la deuda por concepto de la contribución sobre la propiedad inmueble bajo el número catastral 354-041-576-17-000, los "Deudores Hipotecarios" se obligan a saldar la misma en o antes de los próximos sesenta (60) días a partir del día 29 de julio de 2021.

g) Este acuerdo se realiza sin imposición de costas, gastos y honorarios de abogado si estos cumplen con los acuerdos alcanzados.

A raíz del mencionado *Acuerdo*, el 12 de agosto de 2021, el foro primario emitió una *Sentencia de Archivo Por Desistimiento Con Perjuicio Por Transacción*.[6] En dicha *Sentencia*, el foro de instancia le impartió su aprobación al *Acuerdo* presentado y decretó el archivo del caso por desistimiento, con perjuicio.

El 16 de agosto de 2021, la parte peticionaria presentó una *Moción de Reconsideración a los Fines que se Deje Sin Efecto la Sentencia de Archivo por Desistimiento Con Perjuicio por Transacción Dictada el 12 de agosto de 2021*.[7] Aseveró que en ningún momento han presentado una petición de archivo por desistimiento. Adujo que en ninguna parte del *Acuerdo* presentado señala que se tiene por desistida la acción con perjuicio.

Así las cosas, el 19 de agosto de 2021, ambas partes presentaron, en conjunto, una *Moción en Cumplimiento de Orden*[8], mediante la cual le expresaron al foro primario que llegaron a un acuerdo y plan de pago que dispone de la controversia del caso. Sin embargo, sostuvieron que, "en vista de los acuerdos alcanzado – de incumplir la Parte [Recurrida] – la Parte [Peticionaria] podría presentar una acción por incumplimiento o solicitar la reapertura del procedimiento".

---

[6] Entrada Núm. 18 del SUMAC TPI. Dicha *Sentencia* fue notificada el día 13 de agosto de 2021.

[7] Entrada Núm. 20 del SUMAC TPI.

[8] Entrada Núm. 22 del SUMAC TPI.

Atendida la *Moción*, el 19 de abril de 2022[9], el foro sentenciador emitió otra *Sentencia por Acuerdos Contraídos de Conformidad con Ley Núm. 184 del 17 de agosto de 2012*.[10] En el referido dictamen, dejó sin efecto la *Sentencia* previamente emitida del 12 de agosto del 2021. Además, dictó *Sentencia* de conformidad con los términos contenidos en el documento de *Aceptación de Acuerdos por Videoconferencias* y expresó que, en la eventualidad de incumplimiento por los esposos Bitler, el foro primario "autoriza a la parte [peticionaria] a solicitar la reapertura y continuación del presente caso desde la etapa que se encontraba previo a que ordenáramos la vista de mediación en adelante".

Pasados casi cuatro años, el 10 de marzo de 2026, la parte peticionaria presentó una *Moción Solicitando Reapertura del Caso, Determinación de Incumplimiento y Ejecución de Sentencia*.[11] En síntesis, alegó que los esposos Bitler incumplieron con los términos de la *Sentencia* emitida por el foro primario. Adujo que los esposos Bitler dejaron de pagar los plazos correspondientes a los meses de octubre, noviembre, diciembre de 2025, enero, febrero y marzo de 2026. Sostuvo además, que los esposos Bitler adeudan la suma de $24,942.96 por concepto de contribuciones sobre la propiedad inmueble (CRIM). Solicitó al foro primario a que ordenara la reapertura del caso, dispusiera que no procede referir nuevamente el caso a mediación compulsoria y que ordenara la expedición del Mandamiento de Ejecución de la Sentencia para la venta en pública subasta del bien inmueble.

En respuesta, el 13 de abril de 2026, los esposos Bitler presentaron una *Moción en Cumplimiento de Orden (ENT. 31)*.[12] En resumen, sostuvieron que previo a que el foro primario refiriera el caso a mediación, la etapa en que se encontraba el caso era una inicial, en la que estos aún

---

[9] Notificada el día 25 del mismo mes y año.

[10] Entrada Núm. 26 del SUMAC TPI.

[11] Entrada Núm. 27 del SUMAC TPI.

[12] Entrada Núm. 33 del SUMAC TPI.

no habían presentado su alegación responsiva. Adujeron que, de ser necesaria la reapertura, correspondería la concesión de un término a estos para presentar su contestación a la *Demanda*. Además, señalaron que los pagos alegados por la parte peticionaria fueron realizados y que la cuantía relacionada con los impuestos del CRIM está sujeta a un plan de pago aprobado por el CRIM. Por ello, adujeron que no existe una deuda madura al presente, por lo que no procede la reapertura del caso.

El 13 de abril de 2026[13], el foro primario emitió la *Resolución Interlocutoria* que hoy nos ocupa.[14] En dicho dictamen, el foro de instancia declaró No Ha Lugar la *Moción* promovida por la parte peticionaria.[15]

Inconforme, el 18 de mayo de 2026, la parte peticionaria acudió ante esta Curia, mediante una *Petición de Certiorari,* y esbozó los siguientes señalamientos de error:

> Primer Señalamiento de Error: Erró el Tribunal de Primera Instancia al declarar "No Ha Lugar" a la solicitud de reapertura del caso, ignorando la cláusula expresa contenida en la Sentencia que autoriza dicha reapertura ante el incumplimiento de los demandados.
>
> Segundo Señalamiento de Error: Erró el Tribunal de Primera Instancia al así resolver, al evaluar la procedencia de la reapertura a base de pagos realizados con posterioridad al incumplimiento que activó el derecho de la parte peticionaria conforme a la Sentencia.
>
> Tercer Señalamiento de Error: Erró el Tribunal de Primera Instancia al así resolver, al no reconocer el patrón de incumplimiento continuo de los demandados en una obligación de cumplimiento periódico en plazos mensuales.
>
> Cuarto Señalamiento de Error: Erró el Tribunal de Primera Instancia al así resolver, al considerar, implícitamente, la necesidad de requerimiento previo o notificación de incumplimiento, en contravención de la renuncia expresa contenida en el pagaré hipotecario.
>
> Quinto Señalamiento de Error: Erró el Tribunal de Primera Instancia al así resolver, al no considerar el incumplimiento independiente de los demandados relacionado con la obligación de mantener al día el pago de las contribuciones sobre la propiedad (CRIM), conforme a la escritura hipotecaria.

---

[13] Notificada el día siguiente.

[14] Entrada Núm. 34 del SUMAC TPI.

[15] El 22 de abril de 2026, la parte peticionaria presentó una *Moción de Reconsideración de Resolución que Denegó Reapertura del Caso* (Entrada Núm. 35 del SUMAC TPI), la cual fue declarada No Ha Lugar en esa misma fecha (Entrada Núm. 36 del SUMAC TPI).

El 19 de mayo de 2026, emitimos una *Resolución*, mediante la cual le ordenamos a la parte recurrida que presentara su oposición a la expedición del auto. En cumplimiento de ello, el 28 de mayo de 2026, la parte recurrida presentó una *Oposición a Expedición del Recurso de Certiorari, Solicitud de Desestimación y/o Alegato en Oposición*.[16]

En síntesis, planteó que la misma parte peticionaria reconoció que estos se encontraban vigentes en sus pagos. Alegó que mediante la solicitud de reapertura, el peticionario pretendió que el foro de instancia hiciera una determinación de incumplimiento, dictara sentencia y que ordenase la ejecución de hipoteca, sin cumplir con su carga probatoria. Señaló que lo único que provee la *Sentencia* es que la parte peticionaria está facultada a solicitar la reapertura de los procedimientos. Reiteró que los pagos pendientes se habían realizado y que se encuentran en un plan de pago con el CRIM.

Con el beneficio de la comparecencia de ambas partes, procedemos a esbozar el marco doctrinal a la controversia que hoy nos ocupa.

**II.**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. *Rivera et al v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Orthopedics Prod. Of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021); Art. 670 del Código de Enjuiciamiento Civil de 1933, conocido como Ley de Recursos Extraordinarios, 32 LPRA sec. 3491. La característica distintiva del *certiorari* "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *Íd.* Ahora bien, el ejercicio de esta discreción no es absoluto. Por ello, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece una serie de instancias en las que los foros apelativos pueden ejercer su facultad revisora:

---

[16] Entrada Núm. 3 del SUMAC TA.

El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

La Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, pág. 62-63, 215 DPR ___ (2025), delimita los criterios para la expedición de un auto de *certiorari.* Así pues, estas consideraciones "orientan la función del tribunal apelativo intermedio para ejercer sabiamente su facultad discrecional". *Rivera et al v. Arcos Dorados et al*, supra. La aludida regla permite que el análisis del foro apelativo intermedio no se efectúe en el vacío ni se aparte de otros parámetros al momento de considerar los asuntos planteados. *BPPR v. SLG Gómez-López*, 213 DPR 314, 337 (2023); *Rivera et al v. Arcos Dorados et al*, supra; *Torres González v Zaragoza Meléndez*, 211 DPR 821, 848 (2023); *800 Ponce de León v. American International*, 205 DPR 163, 176 (2020). De conformidad con lo anterior, la Regla 40, *supra*, dispone los siguientes criterios:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial*". Zorniak Air Servs. v. Cessna Aircraft Co*., 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

### III.

La parte peticionaria recurre de una *Resolución Interlocutoria* por medio de la cual el foro primario declaró No Ha Lugar su *Moción Solicitando Reapertura del Caso, Determinación de Incumplimiento y Ejecución de Sentencia.* Tras un análisis ponderado de la totalidad del expediente ante nuestra consideración, concluimos denegar la expedición del auto de *certiorari*.

La expedición de un recurso de *certiorari* es de naturaleza discrecional. La Regla 40 del Tribunal de Apelaciones, *supra,* orienta la facultad discrecional que le asiste a este Tribunal. En vista de lo anterior, al examinar los criterios recogidos en la precitada Regla, determinamos denegar la expedición del recurso de epígrafe. La *Resolución Interlocutoria*

recurrida no es contraria a derecho y no proviene de una apreciación parcializada, prejuiciosa o que exhiba error manifiesto.

Cabe puntualizar que, al denegar el auto de *certiorari* presentado, no estamos prejuzgando los méritos de los reclamos entablados. Sino que, únicamente declinamos intervenir en el asunto que hoy se nos solicita revisar.

**IV.**

Por los fundamentos que anteceden, *denegamos* la expedición del recurso presentado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones